**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DANA MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| KIPP ST. LOUIS. ) | |
| ) | |
| Defendant ) | |
| ) | |
| ) | |
| *Serve:* Thomas A. Durphy ) | |
| *8235 Forsyth Blvd.* ) | |
| *Suite 700* ) | |
| *St. Louis, Missouri 63105* ) | |

**PETITION**

COMES NOW Plaintiff Dana Morris ("Morris" or "Plaintiff"), by and through her undersigned counsel, and for her Petition against Defendant KIPP St. Louis ("Defendant"), states as follows:

**INTRODUCTION**

1. Plaintiff Dana Morris is bringing this lawsuit to seek redress for unlawful employment discrimination and retaliation. Morris was subjected to unlawful employment discrimination based on her race and retaliation, resulting in her termination. Morris brings claims for redress under Title VII of the Civil Rights Act, as amended ("Title VII") and the Family Medical Leave Act ("FMLA").

**PARTIES, VENUE, AND JURISDICTION**

1

2. Plaintiff is an Illinois resident, but worked at Defendant's location in St. Louis, Missouri during times relevant.

3. Defendant is registered to do business in the State of Missouri, and has at least one business location within this judicial district.

4. The FMLA authorizes court actions by private parties to recover damages for violations of its provisions. Jurisdiction over Plaintiff's FMLA claim is based on 29 U.S.C. § 2617.

5. Title VII authorizes court actions by private parties to recover damages for violations of its provisions. Jurisdiction over Plaintiff's Title VII claims is based on 42 U.S.C. § 2000(e).

6. Venue in this district is proper because Defendant does business in this district and employed Plaintiff to work in this district, and because substantial unlawful conduct giving rise to the claims set forth in the Complaint occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. On or about May 24, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging unlawful race discrimination and retaliation.

8. Plaintiff's Charge of Discrimination provided the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial petition may be and is as broad as the scope of the investigation that could reasonably be expected to have grown out of the Charge.

9. Plaintiff received a Notice of Dismissal and Right to Sue from the EEOC on or about May 7, 2025, and this action was initiated within 90 days thereof. A true and accurate

copy of the Right to Sue letter issued to Plaintiff by the EEOC is attached hereto as Exhibit 1.

10. Plaintiff timely complied with all administrative prerequisites prior to filing this lawsuit.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

11. Defendant hired Morris to be a Curriculum Manager on or around August 4, 2021.

12. Morris is African-American.

13. Morris's direct supervisor was Lauren Chaney, Director of Academics.

14. Ms. Chaney is Caucasian.

15. Morris was one of three Curriculum Managers.

16. Morris was the only African-American Curriculum Manager. The other Curriculum Managers were all Caucasian.

17. Morris's job duties generally included:

　　a. Discussing the curriculum with multiple Principals and Assistant Principals across three schools;

　　b. Being responsible for making sure that the students' tests were uploaded into the Learning Management System;

　　c. Reviewing student data;

　　d. Making Assistant Principals aware of student scores in an effort to improve student success in the future;

　　e. Creating videos of teacher instruction to be analyzed for curriculum review;

　　f. Setting up school site visits for outside curriculum vendors;

　　g. Strategizing with teachers to go over teaching concepts.

18. Around the time of Morris's start date Ms. Chaney became hypercritical of Morris's work product, assigning Morris extra work not assigned to Morris's Caucasian colleagues, and disciplining Morris for illegitimate reasons. For example,

   a. Ms. Chaney assigned Morris, and only Morris, to review the elementary Social Studies curriculum and make corrections to it. Ms. Chaney did not require the Caucasian Curriculum Managers to review and correct the middle school and high school Social Studies curriculum;

   b. One of Morris's fellow Curriculum Managers, Elizabeth Valero, routinely failed to turn in her work product without ever being disciplined. Instead, that Curriculum Manager was promoted to another position at the end of the 2021-2022 academic year;

   c. During a professional development session, Morris asked the outside curriculum vendor leading the professional development an innocuous question about a proposed curriculum. Ms. Chaney gave Morris a verbal discipline for asking the outside sales vendor that question, accusing Morris of being unprofessional.

      i. As discipline, Ms. Chaney assigned Morris to two additional professional development sessions with that same outside vendor. Ms. Chaney did not assign the Caucasian Curriculum Managers to attend the additional two professional development sessions.

19. Ms. Chaney was not hypercritical of the Caucasian Curriculum Managers' work product.

20. On or about October 2021, Morris complained to Human Resources ("HR") about microaggressions and mistreatment she experienced at the hands of Ms. Chaney.

21. Morris specifically complained that she was being harassed and discriminated against because of her race.

22. Shortly after filing her complaint with HR, Morris, Chaney, and HR met to discuss Morris's complaint.

23. After her complaint to HR, Ms. Chaney placed Morris on a Performance Improvement Plan ("PIP").

24. Ms. Chaney alleged that Morris was failing to obtain feedback from multiple Principals and that Morris should have been obtaining the Principals' feedback throughout the academic year.

25. The PIP period was scheduled to last through the end of the academic year.

26. Even though Morris raised a complaint to HR about Ms. Chaney's harassment and discrimination of her due to her race, Morris was required to meet with Ms. Chaney on a weekly basis during the PIP period.

27. Shortly after being placed on the PIP, Morris again complained to HR stating she was being placed on the PIP in retaliation for previously complaining to HR earlier in the academic year.

28. Morris met with HR shortly after her second complaint.

29. Morris's meeting with HR was fruitless as HR failed to investigate Morris's complaints.

    a. HR indicated to Morris that it did not intend to investigate her complaint, and instead, told Morris she just needed to follow through with the PIP.

30. At the end of her PIP period, Morris met with HR and Ms. Chaney. During that meeting, Ms. Chaney admitted that the purpose of placing Morris on the PIP (*i.e.*, failing to

obtain feedback from multiple Principals) was improper as Morris had been obtaining feedback from multiple Principals all academic year long.

31. Upon information and belief, the PIP stayed in Morris's personnel file.

32. On or about April 2022, Morris applied for the Data Specialist position.

33. Defendant never interviewed Morris for the position.

34. Upon information and belief, Defendant hired a Caucasian individual for the position.

35. Upon information and belief, the newly hired individual had less experience and was less qualified for the Data Specialist position than Morris.

36. On or about May 24, 2022, Morris filed a charge of discrimination with the Equal Employment Opportunity Commission alleging race discrimination and retaliation.

37. The harassment continued into the following school year. Ms. Chaney would require Morris to complete additional tasks not required of Morris's Caucasian Curriculum Manager colleagues. For example,

   a. Multiple Principals frequently failed to turn in their work to Ms. Chaney (as was required of them), but Ms. Chaney would verbally discipline Morris over the Principals' failures;

   b. Ms. Chaney required Morris to frequently engage in "Learning Walks" (*i.e.*, formulate action plans with multiple Assistant Principals and teachers regarding curriculum) but did not require the Caucasian Curriculum Managers to do the same.

38. On or around September 2022, Morris applied to be the President of Academics for Defendant.

39. In November 2022, Morris complained to Kelly Garrett, the Executive Director at the time, about the harassment, discrimination, and retaliation she had faced.

40. On or around December 2022, Morris was informed she did not get the President of Academics position.

41. Morris inquired as to why Defendant passed on hiring her, and she was told "There was nothing that separated the people who advanced in the hiring process from you. Kelly [the Executive Director] just makes the decision."

42. Due to the constant harassment, discrimination, and retaliation she faced, Morris's health decompensated to the point she needed to be placed on protected medical leave under the FMLA.

43. Morris began her full time FMLA leave on or about February 2023.

44. While on medical leave, Defendant scheduled a personnel meeting with Morris.

45. Morris met with Davonne Young, Vice President of Human Resources, on or around late April/early May 2023.

46. Defendant stated that Morris's last day of employment would be May 31, 2023.

47. Defendant terminated Morris's employment on May 31, 2023.

48. Defendant discriminated against Morris because of her race.

49. Defendant retaliated against Morris for complaining internally to HR and to the Executive Director, and for filing a charge of discrimination with the EEOC.

50. Defendant retaliated against Morris for taking leave under the FMLA.

51. Defendant's conduct was outrageous and showed complete indifference to or conscious disregard for Morris's rights.

52. Defendant's conduct is in violation of Title VII.

53. Defendant's conduct is in violation of the FMLA.

54. As a direct result of Defendant's conduct, Morris has suffered damages, which include loss of wages and benefits, past and present, mental anguish, emotional distress, pain and suffering, a detrimental job record, career damage and diminished career potential, mental distress in the form of embarrassment, humiliation, anxiety, loss of enjoyment of life, loss of sleep and other non-pecuniary losses, all of continuing and permanent nature.

**COUNT I: RACE DISCRIMINATION TERMINATION**
(Title VII)

55. Plaintiff realleges and incorporates by reference the allegations in all above-listed paragraphs as if fully set forth and restated herein.

56. Defendant treated Plaintiff, who is African-American, less well than it treated caucasian employees.

57. As an African-American, Plaintiff is a member of a protected class under Title VII.

58. Defendant unlawfully discriminated against Plaintiff on the basis of her race when it terminated her employment on or about May 31, 2023.

59. Plaintiff's race was a motivating factor in Defendant's decision to terminate her employment.

60. At the time of her termination, Plaintiff was qualified for her position and met or exceeded Defendant's legitimate performance expectations.

61. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff on the basis of race in violation of Title VII.

62. As a result of Defendant's actions and failures to act described herein, Plaintiff suffered emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

63. In addition, Plaintiff lost income and benefits of employment and has incurred and will continue to incur attorneys' fees, costs and expenses of suit.

64. Defendant's actions were intentional, willful, knowing, wanton, and malicious; and in flagrant disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment in her favor and against Defendant and, in amounts to be determined at trial, for actual damages, including past and future lost income, compensatory damages, punitive damages, prejudgment interest, and attorneys' fees and costs of suit, and for such other relief as justice requires.

## COUNT II: RACE DISCRIMINATION FAILURE TO PROMOTE
(Title VII)

65. Plaintiff realleges and incorporates by reference the allegations in all above-listed paragraphs as if fully set forth and restated herein.

66. Defendant treated Plaintiff, who is African-American, less well than it treated caucasian employees.

67. As an African-American, Plaintiff is a member of a protected class under Title VII.

68. Defendant unlawfully discriminated against Plaintiff on the basis of her race when it failed to promote her when she applied for multiple positions.

69. Plaintiff's race was a motivating factor in Defendant's decision to not promote her.

70. At the time of applying, Plaintiff was qualified for all positions.

9

71. Defendant, by its actions and failures to act, including but not limited to those described above, discriminated against Plaintiff on the basis of race in violation of Title VII.

72. As a result of Defendant's actions and failures to act described herein, Plaintiff suffered emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

73. In addition, Plaintiff lost income and benefits of employment and has incurred and will continue to incur attorneys' fees, costs and expenses of suit.

74. Defendant's actions were intentional, willful, knowing, wanton, and malicious; and in flagrant disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment in her favor and against Defendant and, in amounts to be determined at trial, for actual damages, including past and future lost income, compensatory damages, punitive damages, prejudgment interest, and attorneys' fees and costs of suit, and for such other relief as justice requires.

### COUNT III:  RETALIATION
(Title VII)

75. Plaintiff realleges and incorporates by reference the allegations in all above-listed paragraphs as if fully set forth and restated herein.

76. Plaintiff engaged in protected activity under Title VII by complaining of race discrimination to Defendant multiple times and by filing a charge of discrimination alleging race discrimination and retaliation with the EEOC.

77. Defendant, by its actions and failures to act, including but not limited to those described above, retaliated against Plaintiff in violation of Title VII. This retaliation included and culminated in failing to promote Plaintiff and in the termination of Plaintiff's employment.

78. As a direct result of Defendant's unlawful employment practices, Plaintiff has suffered damages in the form of lost wages and benefits of employment, future wages, emotional distress, humiliation, and diminished employment status.

79. Defendant's actions were intentional, willful, knowing, wanton, and malicious; and in flagrant disregard for the rights of Plaintiff.

WHEREFORE, Plaintiff prays that this Court will, after trial by jury, enter judgment in her favor and against Defendant and, in amounts to be determined at trial, for actual damages, including past and future lost income, compensatory damages, prejudgment interest, and attorneys' fees and costs of suit, and for such other relief as justice requires.

## COUNT IV: FMLA RETALIATION

80. Plaintiff realleges and incorporates by reference the allegations in all above-listed paragraphs as if fully set forth and restated herein.

81. Plaintiff engaged in activity that was protected by the FMLA in seeking leave from work (and taking leave from work) in order to care for her serious health condition.

82. Defendant was aware of Plaintiff's exercise of her FMLA rights.

83. Defendant retaliated against Plaintiff for exercising her FMLA rights and engaging in activity that was protected by the FMLA by terminating Plaintiff's employment.

84. Defendant's behavior described herein was at all times taken in not good faith, and Plaintiff is therefore entitled to liquidated damages.

85. Defendant's conduct described herein was at all times willful.

86. Defendant knowingly or recklessly disregarded the FMLA when it terminated Plaintiff's employment.

87. Plaintiff's FMLA-covered absence and/or her exercise of FMLA rights was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

88. As a direct and proximate result of being discharged in violation of the FMLA, Plaintiff has been damaged and is entitled to recover the following pursuant to the FMLA:

   a. lost wages, salary and employment benefits, from her date of termination potentially up to the date of trial;

   b. interest on the amount in subparagraph (a) above at the statutory rate;

   c. equitable relief, including but not necessarily limited to front pay;

   d. liquidated damages; and

   e. attorneys' fees, expert witness fees and other costs of the action.

WHEREFORE Plaintiff respectfully requests that this Court enter judgment in her favor and find that Defendant unlawfully terminated her in violation of the Family Medical Leave Act, and award to her compensatory damages, together with interest thereon, liquidated damages, front pay, attorney's fees, expert fees and costs, and any and all further relief as to this Court deems just and proper under the circumstances

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS TRIABLE TO A JURY.**

Respectfully submitted,

HERRING & ROOT, LLC

 /s/ *Thomas F. Herring*
Thomas F. Herring #71932
Brady L. Root #75740
252 Countryshire Dr.
Lake Saint Louis, Missouri 63367
Office:  314-329-5662
tfh@herringandroot.com
blr@herringandroot.com
Attorneys for Plaintiff